Barbara AMBUSH, Appellant,

v.

MONTGOMERY COUNTY GOVERN-MENT DEPARTMENT OF FINANCE DIVISION OF REVENUE, and Douglas L. Jernigan, Individually and in his capacity as Chief, Division of Revenue and Frank L. McGovern, Jr., Individually and in his capacity as Financial Supervisor Special Programs Section of the Division of Revenue and A. W. Gault, Individually and in his capacity as Director of Finance and James Gleason, Individually and in his capacity as County Executive and Montgomery County Personnel Board and Gavin Lawson, Individually and in his capacity as Chairman Montgomery County Personnel Board, Appellees.

Barbara AMBUSH, Appellee,

v.

MONTGOMERY COUNTY GOVERN-MENT DEPARTMENT OF FINANCE DIVISION OF REVENUE and Douglas L. Jernigan, Individually and in his capacity as Chief, Division of Revenue and Frank L. McGovern, Jr., Individually and in his capacity as Financial Supervisor Special Programs Section of the Division of Revenue and A. W. Gault, Individually and in his capacity as Director of Finance and James Gleason, Individually and in his capacity as County Executive and Montgomery County Personnel Board and Gavin Lawson, Individually and in his capacity as Chairman Montgomery County Personnel Board, Appellants.

Nos. 79–1177, 79–1191.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1979.

Decided May 1, 1980.

Leonard L. McCants, Silver Spring, Md. (Tilman L. Gerald, Silver Spring, Md., on brief), for appellant in No. 79–1177 and for appellee in No. 79–1191.

Sue Levin, Asst. County Atty., Suzanne (Paul A. McGuckian, County Atty., Richard E. Frederick, Deputy County Atty., Rockville, Md., on brief), for appellees in No. 79–1177 and for appellants in No. 79–1191.

Before WINTER, RUSSELL and HALL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The plaintiff has sued the Montgomery County Government (Maryland), along with certain of the County officials, charging that the County, during a reorganization of its Division of Revenue in the Department of Finance, discriminated against her "by making a pre-selection of a caucasian Office Assistant I for promotion to Office Assistant IV position which the plaintiff was more qualified to hold." The district court, in an oral opinion, after trial without a jury, found discrimination but refused to grant back pay. We reverse the finding of discrimination under Title VII against the

County and the award of judgment against it on the basis of such finding. Such ruling makes moot any claim by the plaintiff for back pay.

I.

The controversy between the parties in this case arises out of a reorganization of the Division of Revenue in the Montgomery County (Maryland) Department of Finance, proposed by Douglas Jernigan after he became Chief of that Division in August, 1973. The suggested reorganization contemplated, among other things, a continuing reclassification of certain existing positions and the creation of a number of new positions. Included in the reorganization was the Special Programs Section of the Division. This section consisted of three units, generally referred to as the Administration or Investigation unit, the Rent Relief Service unit, and the Transfer unit. All three of these units were under the supervision of the Financial Supervisor, who at the times relevant to his controversy was Frank McGovern. The senior employee in the Rent Service unit was the plaintiff, in the Administration or Investigation unit Mrs. DelaCruz, and in the Transfer unit Patsy Thompson. An initial step in the reorganization in December, 1973, provided for a reclassification of a position in both the Administration and Rent Service units as Office Assistant III. There were a number of applicants for these advanced positions. All other than the plaintiff were white. The reclassified promotion in the Rent Service unit was given the plaintiff and the reclassified position in the Administration unit to Mrs. DelaCruz.

The claim of discrimination relates to the next step in the reorganization as it affected the Special Programs Section. After considerable discussion between Jernigan, as head of the Division of Revenue, and Brewster, the Chief of the Division of Classification Compensation and Research, Jernigan was given informal approval of additional parts of his reorganization proposal. Among the changes then approved was the assignment of two Office Assistant IV positions to the Special Programs Section. In consultation with Brewster, Jernigan determined to assign these positions to the Administration and Transfer units of the Section. Jernigan understood that the two reclassifications within these units would be a position-for-position reclassification on a non-competitive basis, i. e., that so long as the senior incumbent employee in the selected unit was qualified for the higher position she would be entitled to the promotion. He communicated this information to his supervisors, including McGovern, with instructions that they should advise their employees the procedure under which the assignment of the reclassified positions would be made. Under this procedure the senior employee in the Administration and Transfer units would receive the promotions.

On the basis of the information given him by Jernigan, McGovern called the plaintiff to his office in order to explain to her that there would be no change in her unit or her status as a result of the allocation of the two new positions to the Special Programs Section. The plaintiff testified McGovern told her at this time that there was no need for her to apply for either promotion. She added that he also told her Patsy Thompson was to receive the promotion assigned to the Transfer unit. This latter statement is contrary to McGovern's recollection of the conversation, as detailed in his testimony. The difference in the recollection of the two, though, is unimportant. It is undisputed that at this point in the reorganization McGovern had been instructed by Jernigan to assign the two promotions to senior employees in the Administration and Transfer units and that Thompson was the senior employee in the Transfer unit at the time. If McGovern told the plaintiff what the latter said he did, he was telling her only what Jernigan had instructed him to advise the employees in his Section.

The plaintiff became very upset when she was told how the new promotions should be assigned. She demanded to know who had made the assignments of the promotions to the respective units of the section and why

the assignments had been made as they had been. She pressed the demand; the argument became heated. McGovern lost his temper. McGovern particularly took offense at the plaintiff's inference that he was "lying" in the responses he had given her. He finally told the plaintiff it was none of her "f___ business," that the assignment of the promotions within the section was the prerogative of her supervisors.

Later Jernigan received information from the County personnel office that his previous understanding of the manner in which the employees to be given the newly assigned positions would not be followed, and that the promotions were to be advertised and to be competitively awarded. He called McGovern, told him of the change and instructed him to tell any of his employees, if they felt qualified, to apply for the promotions. McGovern did advise his employees of the change of procedure in making the promotions and of the right of any of them to apply. The plaintiff testified she was not present when McGovern made the announcement. McGovern, in his testimony said he believed the plaintiff did know of the new method of filling the positions for she later commented to him with reference to the announcement of the change, "[w]hat is the use, we know who is going to get the positions anyway." This testimony of McGovern is supported by the fact that the plaintiff herself justified not applying for the promotion because she said she knew it was already decided who was to be awarded the promotion. In any event the plaintiff did not apply and in due course the promotion was awarded to Patsy Thompson who was, as we have said, the senior employee in the Transfer unit, was familiar with all the details and responsibilities of the unit, had exercised certain subordinate supervisory duties in the unit, and whose work in the unit was rated as more than adequate.

Thereafter, the plaintiff continued to express her dissatisfaction with the failure to promote her to Office Assistant IV. She took her complaint to the Director of Finance. At this time, she was not so much complaining of Thompson's promotion in the Transfer unit as of the failure of the Department to assign an Office Assistant IV position to her Rent Relief unit. Because of this complaint, a desk audit of the Special Programs was ordered by the Director of Finance in order to determine whether the assignments made of the newly authorized Assistant Director IV positions had been properly made on the basis of the complexity, responsibility and work loads of the respective units in the Program. The audit confirmed the determination made by Jernigan.

The plaintiff in the meantime filed her complaint of discrimination with the EEOC. In her complaint she said:

"I met with my supervisor regarding a position for which I was qualified to apply. I was told not to apply because a decision had already been made regarding the position. I later learned that a white woman received the position. I wrote a memo to my dept. head complaining about the promotion procedure utilized by my supervisor. . . . I believe I have been discriminated against because I am a black woman and the discrimination is continuing as a result of my complaints."

After receiving a suit letter from the EEOC, the plaintiff filed this action. The cause came on for trial and, at the conclusion of the testimony, the district judge, in an oral opinion, found that the plaintiff was "qualified to have received the higher Office Assistant IV position" and that "[h]er failure to receive this position can be explained on the basis of racial discrimination found to exist in the initial exchange between Plaintiff and Frank McGovern." It ordered that the plaintiff be promoted "to the next available Office Assistant IV position for which she is qualified." It refused, however, to award back pay to the plaintiff, finding that "from the facts produced in this case, it is obvious that the discrimination exercised towards plaintiff is not a pervasive practice, but, rather, a one-to-one situation" and that "[t]his is not a case of bad faith, or good faith, but rather, a limited area where the deprivation, although harmful to Plaintiff is not an operating

practice of the Defendant County, hence . . . equity to the parties does not require the award of back pay." It found that there had been no discriminatory harassment or treatment of the plaintiff by the County and dismissed any claim to this effect. The County appeals the finding of discrimination and the judgment requiring the award of "the next available Office Assistant IV position for which" plaintiff "is qualified;" the plaintiff has appealed the denial of back pay and the finding against her claim of harassment.

The record is not entirely clear on the exact action taken by the County officials on which the plaintiff rests her claim of racial discrimination as found by the district court. In her conference with Jernigan and with Gault, the Director of Department of Finance, the plaintiff seems to have been complaining of the failure of her superiors to assign one of the two Office Assistant IV positions authorized for the Special Programs Section to her Rent Services unit.[1] This certainly was Gault's understanding of her complaint for, in ordering a desk audit as a result of the plaintiff's complaint, he asked that the audit be directed to determining whether the senior employees in the three units of the Special Programs Section were at the appropriate grade relative to their responsibilities and the responsibilities of the unit itself. However, in her charge filed with the EEOC the plaintiff appears to be claiming that she was qualified for the promotion in the Transfer unit and that Thompson, though less qualified, was preferred over her for this promotion because she (Thompson) was white. Actually, though, the two steps— the selection of the two units in the Section to which the authorized promotions were to be assigned and the selection of the employee to be given the promotion in the Transfer unit—are interdependent. Accordingly, whether viewed separately or together, both actions, if stating a claim of racial discrimination, would be reviewable as dis-

parate treatment claims, as that term was defined in *McDonnell Douglas Corp. v. Green*, (1973) 411 U.S. 792, at 800–01, 93 S.Ct. 1817, at 1823, 36 L.Ed.2d 668; *see also, Board of Trustees v. Sweeney*, (1978) 439 U.S. 24, at 25, n. 2, 99 S.Ct. 295, at 297, 58 L.Ed.2d 216; *Furnco Construction Corp. v. Waters*, (1978) 438 U.S. 567, 579–80, 98 S.Ct. 2943, 2950–51, 57 L.Ed.2d 957.

The resolution of a disparate treatment case depends on the successive disposition of three issues, in which the burden of proof varies from party to party in the controversy. This was the procedure required by *McDonnell Douglas*. Thus the plaintiff has the burden of showing a *prima facie* case of racial discrimination. She may do this merely by showing (1) that there was a vacancy (2) for which the plaintiff, a black, was qualified, but that (3) she was rejected and (4) that the job remained open or a white was given the job. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. at 1824. The defendant, in turn, may rebut such *prima facie* showing by " 'explain[ing] what he [the employer] has done' or 'produc[ing] evidence of legitimate nondiscriminatory reasons,' " for what he did. *Board of Trustees v. Sweeney*, 439 U.S. 25, n. 2, 99 S.Ct. 296. Assuming that the defendant has made such a showing the burden then shifts to the plaintiff to establish that the "reasons" assigned by the defendant for his action were pretextual and a mere cover for racial discrimination. *Smith v. Flax*, (4th Cir. 1980) 618 F.2d 1062.

It is unnecessary to inquire whether the plaintiff has met in this case the initial requirement of showing a *prima facie* case, for it is manifest that the defendant rebutted the plaintiff's *prima facie* case by articulating legitimate reasons both for the selection of the two units in the Special Programs Section to which the two promotions given the Section were assigned and for the selection of Thompson for the promotion

---

1. If one of the authorized positions had been assigned to the Rent Services unit, the plaintiff would have easily qualified as the best qualified employee for the promotion. It is thus understandable that she would assail the assignment of the higher positions to the other units in the Section.

assigned to the Transfer unit in the Section; and it is equally clear that the plaintiff failed to offer any credible evidence that such reasons were but a pretext, intended to mask an intention on the part of the defendant of racial discrimination.

We look first to the defendant's showing of a legitimate nondiscriminatory reason for its selection of the Transfer and the Administration units for the assignment of the two promotions authorized for the Special Programs Section. The initial decision to limit the number of Office Assistant IV positions to two was made by the Division of Classification Compensation Research. As explained by the Chief of that Division, the determination was based on budgetary considerations and a careful analysis of the workload, the responsibilities and the required expertise of a senior employee in the several units. This decision was retroactively reviewed on a desk audit ordered by the Director of Finance after receiving a complaint from the plaintiff. This audit, as carefully detailed by the official who made the audit, confirmed the earlier decision. The decision on the units to which the authorized promotions should be assigned, however, was made by Jernigan. Since plaintiff levels her attack at the selection of the Transfer unit as one of the favored units, the County directed its proof primarily to the reasons for the selection of that unit for one of the promotions. Jernigan, who made the challenged selection, stated the reasons for his selection:

"Because in my opinion that was probably the most complex job of a clerical nature in the entire division, and the next was tax sale, handling the tax sale program which was in my opinion the next complicated—most complicated or complex job, and I might say that ones I had been trying to get upgraded for a long time." [2]

These reasons were not seriously challenged. They certainly satisfied the standard of proof established in *Furnco* and *Sweeney*.

In selecting an employee for this promotion, the employee so selected had concededly to be qualified to assume and carry out the duties and responsibilities of the senior employee in the Transfer unit. In addition to an expert knowledge of the work in the unit, the duties included certain responsibilities for supervision and training of other employees. It is conceded in the record and was found by the district court that the duties in the unit are sufficiently specialized and exacting that, even one experienced in other units of the Program, would require at least six months to develop enough experience to qualify for satisfactory performance in the unit. The plaintiff admitted that she did not have such experience and would require at least six months' experience in the unit before she would be qualified for the position. It is difficult under these circumstances to see how it

---

**2.** McGovern also in his testimony gave an evaluation of the respective workloads and responsibilities in the several Sections as follows:

"The Rent Relief and Tax Credit Section, each individually had a certain set of laws; one was State law, one was County Council law. They were relatively new and they didn't think too much, so that once we established the office procedures, it really was not too difficult to understand how the credit was calculated; what information had to be put on the credit applications; what data they had to research to put on the applications; how the checks were being distributed and so forth. On the other hand, in the Transfer Section, the Transfer laws have been on the books for many, many years, and there are many precedents set along the years that affected commercial property, real property, farm property, all the various types

of transfers that were coming across the desk, so that it was not enough to know the current law on any given type of transfer, you had to be familiar with some of the history. Of course, each type of transaction had a different type of rate, tax rate. It was based upon the amount of consideration of the transfer, the various factors involved, a lot of which were interrelated with the Tax Assessment Office. One had to be familiar with the tax dockets, the assessment documents, what a tax map was. A lot of detailed information had to go on to these deeds. So it is my opinion that the transfer desk was a little tougher to learn, and that is—when I say learn, learn the entire job itself from point A to point Z and all the ramifications thereof—than these special programs."

could be said that the plaintiff qualified for this promotion assigned to the Transfer unit. Actually, at the time the selection was to be made, there was only one employee in the unit who, by experience and performance, had demonstrated the capacity to qualify for the position of Office Assistant IV in the Transfer unit and that was the employee Thompson. The defendant accordingly met its burden of establishing legitimate reasons both for assigning a promotion to the Transfer unit and for giving such promotion to Thompson.

The district court, however, found that the County had not rebutted the plaintiff's *prima facie* showing. It made this finding on the basis of its assumption that the County's burden of proof under *McDonnell Douglas* was "to establish by clear and convincing evidence that the plaintiff would not have received the position even absent the discrimination." That, though, is simply a misconception of the procedure for resolving a disparate treatment case prescribed in *McDonnell Douglas*. That procedure did provide criteria for showing a *prima facie* case, but—and this is the heart of the district court's error—these liberal criteria, if met, did not establish discrimination, they merely shifted the burden of proof. This was a point painstakingly emphasized by Mr. Justice Rehnquist in *Furnco*, 438 U.S. at 576, 98 S.Ct. at 2945, in finding error because a Court of Appeals, doing what the district court did here, had gone "awry . . . in apparently equating a prima facie showing under *McDonnell Douglas* with an ultimate finding of fact as to discriminatory refusal to hire under Title VII." And this shift of the burden of proof did not impose on the employer-defendant any such rigorous requirement as that formulated by the district court, quoted *supra*. *Sweeney* makes this crystal clear. There the majority opinion stated in unmistakable terms that the employer-defendant satisfies his burden if he simply " 'explains what he has done' or 'produce[s] evidence of legitimate nondiscriminatory reasons.' " 439 U.S. at 25, n. 2, 99 S.Ct. at 296. This standard is far different from that stated and followed by the district court as its guide in evaluating the County's showing in rebuttal of *prima facie* showing. The error undermines the district court's finding. If the standard mandated by *Sweeney* and *Furnco* is followed, the conclusion is inescapable that the defendants in this case "showed," "explained" or "articulated"—all of those terms are used to express the employer's burden in *Sweeney*—a legitimate reason for every selection made by them and thus rebutted the plaintiff's *prima facie* case and shifted the burden to the plaintiff of establishing by the preponderance of the evidence that such reason was pretextual and a mere cloak for racial discrimination.

■ The district court apparently found "racial discrimination in the initial exchange between Plaintiff and Frank McGovern." We, however, find nothing in that exchange demonstrating a racial bias on McGovern's part. The only basis given for such a finding was the use by McGovern in his interview with the plaintiff of an obscene word. However objectionable the term may have been, it carried with it no racial overtones whatsoever. Nor was there anything which occurred during the exchange that would provide even an inference of racial bias on McGovern's part. In fact, the district court itself indicates that there was no basis for finding any bias on McGovern's part. The mere fact that McGovern and the plaintiff had a heated discussion about the promotion is not evidence of discrimination. And this is particularly true, when it is conclusively established that the person against whom bias presumably was asserted, was not the person who made the selection of the unit to which the promotion was assigned or of the employee to be promoted in that unit. It is undisputed that Jernigan made both of these decisions. There is no evidence whatsoever that Jernigan was racially biased. To the contrary, the evidence is strong that he was not. This is obvious from Jernigan's earlier treatment of the plaintiff. About a year before the selections in controversy were made, Jernigan was called on to select an employee in this Section to be promoted to Office Assistant III. As we have already

noted, there were five or six white applicants among the employees in the Section who sought the promotion. Jernigan, however, selected the plaintiff for the promotion. In the face of this undisputed evidence, we perceive no basis on which it could be said that Jernigan, in making his decisions in this case, was improperly motivated. Since, to establish discrimination, the plaintiff must fix the burden of so discriminating on Jernigan, it follows that the record is devoid of any credible evidence that the reasons given by the defendants for their promotion decisions were pretextual. The district court erred in concluding to the contrary.

The finding that the plaintiff had no disparate treatment claim disposes of plaintiff's cross-appeal asserting error in denying her back pay. Moreover, after review of the record, we find no clear error in the district court's finding that the plaintiff had not been harassed because of her filing of this claim of discrimination.

Accordingly, the judgment below is reversed and the action is remanded to the district court, with directions to enter judgment in favor of the defendants.